**Carole Luta GOSHEY, a citizen of Florida, Appellant,**

v.

**ITT LIFE INSURANCE CORPORATION, and Minnesota National Life Insurance Company, Appellees.**

No. 78–1203.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1978.

Decided Jan. 12, 1979.

Samuel L. Hanson, Briggs & Morgan (argued), and Donald E. Horton, Jr., St. Paul, Minn., on brief, for appellant.

Edward M. Glennon, Lindquist & Vennum (argued), and John C. Goetz, Minneapolis, Minn., on brief, for appellees.

Before GIBSON, Chief Judge, and LAY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Carole Luta Goshey, the widow of the insured, Jerome Goshey, brought this action against ITT Life Insurance Corporation and Minnesota National Life Insurance Company claiming benefits of $54,000 under a family income rider of a life insurance policy. The action was tried to a jury which returned a special verdict finding that prior to the death of the insured, the policy had been modified to delete the family income rider. Carole Goshey's motion for a judgment notwithstanding the verdict or for a new trial was denied. She appeals from the judgment. We affirm.

On September 21, 1966, Jerome Goshey applied to Minnesota National Life Insurance Company for a life insurance policy to include ordinary life coverage, a children's benefits rider and a family income rider. Pursuant to this application, policy No. 1176 was issued to Goshey on September 23, 1966.[1] It provided $20,000 of ordinary life coverage, a family income rider of $200 per month, and a children's benefit rider insuring the life of his children. The present value of the family income rider on the date of issuance was $49,320. The present value progressively declined thereafter since benefits were calculated from the issue date.

---

1. ITT Life Insurance Corporation acquired the assets of and assumed the obligations of Minnesota National Life Insurance Company subsequent to the issuance of the policy, but prior to the death of Goshey.

When Goshey received policy No. 1176 he was employed at Minnesota National as Agency Secretary. In this position, he acted as the liaison between the selling agents and the home office. He was also responsible for administering the payment of commissions to the agents. This necessitated having a thorough understanding of the types of policies offered by Minnesota National, the premiums payable for each type of policy, and the commissions payable to the agent for each policy. Goshey was considered a competent and knowledgeable insurance agent.

Minnesota National, prior to its merger with ITT, was a relatively small insurance company. It had an office staff of about fifteen persons, including a president, vice-president, underwriter, actuary, agency secretary, and several clerical staff members.

On January 25, 1968, Goshey applied for two additional Minnesota National policies. He filled out the applications signing them not only as the proposed insured but also as agent. The first application was for $50,000 of twenty-year executive decreasing term insurance. The policy provided for payments upon the death of Goshey of an amount progressively decreasing from $50,000 at the issue date to $10,000 in the twentieth year. Goshey indicated on the application that this policy was intended to replace the family income rider portion of policy No. 1176. The second application was for a retirement income policy providing for monthly payments of $60 to Goshey, or his beneficiary, beginning on his sixty-fifth birthday. The payments were to continue for ten years or until his death, whichever occurred later. As in the first application, Goshey stated that the policy was intended to replace the family income rider portion of policy No. 1176. Both applications were accepted shortly after they were made, and the policies issued.

No endorsements appear on the face of policy No. 1176, and no writings were executed by a designated officer of Minnesota National agreeing to the modification. The family income rider was not physically detached from the policy. It was Goshey's duty as agent for the new policies to submit policy No. 1176 for endorsement or to remove the pages of the family income rider from the policy. Minnesota National's internal records show that family income rider coverage was deleted from policy No. 1176 after the applications for the new policies had been accepted. Goshey did not pay premiums for the family income rider thereafter.

Goshey died in July, 1973, and Carole Goshey submitted policy No. 1176 to ITT Life for payment. The Company paid the $20,000 ordinary life portion of the policy, but declined to pay the claimed benefits from the family income rider.[2]

Carole Goshey argues, initially, that there was insufficient evidence to support a finding that Goshey intended to delete the family income rider. Viewing the evidence in the light most favorable to the verdict, see *United States v. Wofford,* 562 F.2d 582, 585 n. 1 (8th Cir. 1977), *cert. denied,* 435 U.S. 916, 98 S.Ct. 1471, 55 L.Ed.2d 505 (1978), we conclude that there is sufficient evidence.

Goshey's written statements on the applications for the two new policies that he intended to replace the family income rider provisions of policy No. 1176, and Goshey's subsequent failure to pay premiums for the family income rider are sufficient evidence to support the jury's finding. Moreover, there was an economic incentive to make the change. The combined monthly premiums for the two new policies were only $1.42 more than the premium for the family income rider. During the period when Goshey's children were growing up, however, the two policies provided substantially more protection than the family income rider.

Carole Goshey next argues that even if Goshey had intended such a deletion that

---

2. The children's benefit rider was converted to paid-up term insurance on the children's lives as provided in the policy.

his actions were insufficient as a matter of law to terminate the coverage. Policy No. 1176 includes the following provision:

MODIFICATION OF POLICY. Only the President, a Vice President, the Secretary or an Assistant Secretary of the Company has power to change modify or waive the provisions of this policy, and then only in writing. The Company shall not be bound by any promise or representation heretofore or hereafter made by or to any agent or person other than as specified above.

Carole Goshey contends that this provision prevented Goshey's attempted modification from becoming effective since no designated officer of Minnesota National agreed to the modification in writing.

Under Minnesota law, the legal relationship between an insured and an insurance company is contractual. *See Rasmussen v. Prudential Insurance Company,* 277 Minn. 266, 152 N.W.2d 359 (1967); *Shake v. Westchester Fire Ins. Co.,* 158 Minn. 40, 196 N.W. 804 (1924). Ordinarily, under contract law, a provision purporting to prohibit modification of a contract except by a specified method does not prevent the parties to the contract from modifying it by some other method. *See generally,* 3 A. Corbin, Contracts § 574 (2d ed. 1960). Carole Goshey maintains, however, that provisions regulating the modification of life insurance policies present a unique situation because of their nature. She notes that life insurance policies are contingent on the occurrence of a certain event in contrast to casualty insurance which is contingent on the occurrence of an uncertain event; that the insured in a life insurance policy will be unable to testify when coverage issues are raised, and that life insurance policies create rights or conditional interests in the beneficiaries which demand protection.

This argument is not without merit. Goshey, however, presents a unique case. Goshey was a competent and experienced insurance agent. As Agency Secretary he knew the proper procedures for modifying a policy, and as agent for the two new policies he had the responsibility to see that the provisions were followed. He did not, however, comply with them. We agree with the District Court that the modification provision did not prevent an effective modification of the policy.

Carole Goshey also contends that Goshey's attempted modification was ineffective because it did not comply with the provisions of Minn.Stat.Ann. § 61A.05. Minn. Stat.Ann. § 61A.05 provides:

Every policy of insurance issued or delivered within this state on or after the first day of January, 1908, by any life insurance corporation doing business within the state, shall contain the entire contract between the parties.

Every policy which contains a reference to the application, either as a part of the policy or as having any bearing thereon, shall have a copy of such application attached thereto or set out therein.

The applications evidencing the modification were not attached to nor incorporated into policy No. 1176.

Section 61A.05 was designed primarily to leave a complete written record of the insurance transaction when the insured dies. *Coughlin v. Reliance Life Ins. Co.,* 161 Minn. 446, 201 N.W. 920 (1925). The section recognizes that the typical insured is relatively unsophisticated about insurance transactions and that the insurance company is primarily responsible for the preparation and submission of the policies. *See id.* Here, however, Goshey as agent for the two new policies, was responsible for seeing that his old policy was properly submitted for endorsement or for removing the family income rider from the policy. Moreover, the applications prepared by Goshey in his own hand serve as a written record of the transaction, although they are not attached to policy No. 1176. We conclude that the District Court properly held that § 61A.05 did not prevent Goshey from modifying the policy in the manner he did.

Carole Goshey finally argues that the court erred in failing to instruct the jury that a contractual modification must

be proved by "clear and convincing evidence." She did not, however, request this instruction in the District Court, nor did she object to the instructions that were given. Thus, she is precluded from presenting this issue to us on appeal. *See U. S. for & on behalf of Cannon Air Corp. v. Nat. Homes*, 581 F.2d 157, 162 (8th Cir. 1978).

The judgment of the District Court is affirmed.